HHOME v. AT&T MOBILITY May it please the Court, the District Court committed reversible error by using a dictionary definition of the term gateway to narrowly construe the term intelligent gateway so as to exclude the preferred environment of Figure 2. Accordingly, this Court should reverse the claim construction, reverse the entry of judgment of no infringement, and remand for trial in the merits. So you're arguing that Figure 2 is excluded because there's no connection to an external network. Exactly right. Now, the issue is well-briefed, it's only one issue, it's well-briefed, so I'll be short today. I just want to talk quickly about Figure 2 and its disclosures and then address two of the more central arguments of the defendants. First, as you know, the 487 patent is directed to roamers in a visiting network. In the example we give in our brief, we have a lawyer from Germany trying to call the European Washington, D.C., and she's using the dialing sequences that you'd normally use in Germany. But unfortunately, the Washington, D.C. network doesn't understand it. The Starholm solution and the solution of the 487 patent is to put an intelligent gateway in the Washington, D.C. visited network to translate those dialing sequences from the The operation is simple. As you can see, step one, you have the telephone call. I think we really understand how the whole system works. Sure. It would really be useful if you got straight to why you think Figure 2 would be excluded. There is nothing about the intelligent gateway, as it operates in Figure 2, which requires any communication other than the transfer of information back and forth. Figure 1 has an external network, right? Figure 1 shows an embodiment where the intelligent gateway is connected as an option for what it calls a packet switch network. We would commonly call it the internet today. Which is different from the network that it is otherwise, the caller is otherwise in, correct? It's the network, the internet is a different network, certainly. So Figure 1 discloses two networks. So isn't it true that your argument really hinges on how we interpret the discussion of Figure 2 in the patent, which keeps referring back to Figure 1? Do we adopt a notion that Figure 2 is a separate, discrete embodiment or further elaboration on Figure 1? Is that the heart of the argument? I feel like that's what you guys both presented to us in the brief. That's the heart of the argument, but let me take apart certain parts that you may be mistaken. First, Figure 1 has a home network, it has a visited network, and it talks about a packet switch network. And then it has the roamer and the visited one. So there are more than two networks in Figure 1. Figure 1 is described as showing some embodiments which has options. The mobility probe is an option. Can we assume that just the term gateway, that we're talking about two distinct networks? Yes. A gateway does work as a translator between two networks, particularly two network protocols. In the context of the 487 patent, what you have is a roamer in a visited network using the protocols of its home network and trying to communicate with and exchange information, if you will, the visited network. So the intelligent gateway is functioning as a gateway by doing that translation. So if there's two distinct networks, what does it matter if one of those is an external network or not? It doesn't matter, but it's not required. In the embodiment showed in Figure 2, the intelligent gateway can perform its gateway function of translating dialing sequences from a visited network into dialing sequences of a roamer from his home network into a dialing sequence the visited network would understand. That's its gateway function, and that's how it's working. There is no requirement, as you can see with Figure 2, that it also exchange information with some other external network. I guess you're right. Certainly looking at Figure 2 by itself, there's no requirement, but I'd like you to address how we interpret or understand the language in the specification that says, Figure 2 is a call flow of a short-coded call in accordance with the system of Figure 1. So it isn't saying Figure 2 is a different system. That's what's in Figure 1. It's saying Figure 2 is demonstrating a call flow within the system of Figure 1. So Figure 1 is still very much part of Figure 2. Figure 2 is just sort of a subset of it. Certainly not. Let me take that into various parts. First, a call flow, by its very terms, is how information is transferred. So you can see that the transfer of information that's occurring in Figure 2, the call flow, is only between the intelligent gateway and the mobile switch network. Its reference to Figure 1 is showing that in some of the embodiments of Figure 1, you can use the intelligent gateway as illustrated in Figure 2. Now let me repeat that because it's slightly confusing without the point about Figure 1. There's nothing in the specification that says Figure 1 is a single system and it has to have all those components. The specification expressly says that Figure 1 is an illustration of some embodiments of the present invention. So when you look at Figure 1, you see multiple versions of the components that are necessary for the invention. One optional component is the connection to the external network. It's optional. It's set as optional, and there's nothing required. Where does it say it's optional? Certainly. If you look at column 2, line 30, it says VPLMN30. That's the mobile switch network. May be coupled to a global packet switch network via a visited intelligent gateway. May be coupled. It's not required. And one skill in the art understanding this call flow would know that a connection to the external internet is not required. And I submit, Your Honor, that the defendants conceded that in their opposition brief. They say Figure 2 shows the essential connections and components necessary for that call flow. And that's the translation of dialing sequences. Moreover, Claims 10 and Claims 40 are written to cover exactly the embodiments that we see in Figure 2. And there's nothing about those claims that require any connection to an external network. It can perform its gateway functions by simply communicating back and forth with the mobile switch network. I guess I'm having a little trouble understanding the sentence at column 2. Let me just tell you when I read it how I understood it, and you tell me why I'm wrong. When it says VPLMN30 may be coupled to a global packet switch network 22 via a visited intelligent gateway, I guess I didn't understand that sentence to suggest that there weren't a requirement of two networks, but rather that the coupling may occur through an intelligent gateway. That there had to be two networks, but it was the may I thought when I read it was about the gateway doing the coupling. No, that's just saying that the visited network can talk to the Internet if it so chooses by connecting the intelligent gateway to the Internet, the packet switch network, and that's saying it's purely optional. Now, again, when we're talking about two networks, the gateway is performing. It's not between the Internet and the mobile switch. On figure 26, the international telephone network, not figure 26, number 26. What is that? Where is that? Is that external? Is that an external network? That's an external network. That's known as the whole international telephone network. How does figure 2 show a gateway that's not connected to an external network? Figure 2, let me do this so the microphone picks it up. As you can see from figure 2, the connection is at steps 2 and 3. It's talking back and forth to the mobile switch network, and then the mobile switch network, the ETLMN-30, then connects to an international telephone network. You also have shown a home network. Now, let me end where we began. We talked about a gateway being between two networks. The two networks here is the roamers network and the roamer from a home network and the visited network, and that's expressly recited in the claims. The two networks that the gateway is translating are recited in the claims. It's the first mobile network, the visited network, number 30, and the roamers network protocol, if you will, shown here as 20. I'll reserve the rest of my time for rebuttal unless the court has any further questions. Thank you. Mr. Perry? Thank you, Judge Moore, and may it please the court. My friend agreed that a gateway connects two networks together. This is a term of art in network communications. This is a careful technical term that these applicants chose to use. They did not claim a network element or a node or a module or a switch or any of the other terms that appear in this patent. The term gateway or its abbreviation appears 146 times in this patent, and we know what a person of skill in the art understood a gateway to mean at the time because the technical treatises that this court has relied on over and over again tell us a connection between two networks translating not dialing sequences, as Mr. DiMatteo said, but network protocols, linking, for example, a circuit switch network to a packet switch network or two different kinds of networks, a wireless network to a wired network. A gateway, which is claimed in the system claims and the apparatus claims, is a specific term that is known to network engineers, network architects, to require an external network. The claims and the specification are absolutely consistent with that. Judge Moore, you asked about the optional connection, and Mr. DiMatteo said this was optional. The patent uses may again more than 100 times. When the applicants meant optionally may, they said so. Column 5, line 13, the system may optionally do something. Column 4, line 45, optionally may do something. They inserted the additional word optional when they wanted an option. May indicates only that the global packet switch network 22 is an example of a network, but that the intelligent gateway may be used to connect to other networks. Judge Rayner, you're absolutely right. The international telephone network, Mr. DiMatteo, that answer to you, I believe, was there's no direct connection. The district court rejected that construction, which was actually offered by the defendants, and said that the connection may be direct or indirect. So even figure 2 shows connection of two networks. Moreover, the patent discloses a specific third kind of network, a virtual private network. That is, a corporate network, for example, or this court may have a virtual private network for the judges and their staff to use, but an intelligent gateway could connect directly between the mobile network, the VPL, MNN, and 30 in the nature of this patent, and the virtual private network, and that's all disclosed in one of the embodiments in the specification. Judge Moore, figure 2 is not a standalone embodiment. It is a view in the language of the regulations, 1.81, of the system claim, which is depicted in figure 1. As the court knows, the drawings must disclose every element claimed in the patent. This patent claims two systems. Claim 1 claims a system with multiple intelligent gateways. Claims 10 claims a system with a single intelligent gateway. Figure 1 and figure 3 are what you would say are the two embodiments. Those are the two depictions of those two claim systems. There are two claim systems, single IG, multiple IGs. Figure 1 depicts a single IG system. Figure 3 depicts a multiple IG system. Figure 2, as the patent says in so many words, is simply a call flow of the system of figure 1. A call flow, if you think of a circuit diagram, for example, if I claimed an electronic part, I would have to show all of the circuitry. But if I showed an electron flow, I would only show the components that those electrons went through to perform a particular function. That's all a call flow is. And you can tell that, again, if you look at the regulations, 1.81 says the patentee may not use arrows in the drawings except to indicate the direction of information flow as relevant to this kind of a patent. The arrows, which you notice are not in figure 1. Figure 1 showed connections. Figure 2 shows arrows. That is the call flow, the information flow of a single call, a single type of call, these short-coded calls. It doesn't even cover the SMS delivery or the call assistance embodiments that are claimed elsewhere in the patent. A single type of call through the figure 1 system, and in this call, it is routed in that way. Now, this depiction, however, does not in any way exclude an external network. It requires an external network. VIG32 is the same as VIG32. Eventually, but isn't the intelligent gateway the connection between numbers 2 and 3 that we see there? Your Honor, it is. VIG32, there, is the same VIG32. So in this depiction, we don't see that the intelligent gateway is necessarily connected to the Web, to the International Telephone Network. I mean, eventually it gets there. But the point of novelty in the invention is this connection between 2 and 3 there to translate foreign telephone numbers. May I address that, Your Honor? It translates those telephone numbers using database 31, which is inside that box. Database 31, which is also disclosed in the patent, listed in figure 1 as well. Database 31, as the patent tells us, and this is at line 4, column 4, lines 33 to 35, is updated on a regular basis using the Global Packet Switch Network. The inventive aspect here, Your Honor, what the real invention is here, is that that box knows all the codes in the home network. How does it know those codes? It's because it's updated on a regular basis using the Internet. That's the invention. So that even this single call flow, it's not calling out to the Internet because that information's already in the box. But the patent elsewhere in the specification, again, column 4, line 33, discloses that it must be updated using an external network. My friend, Mr. DiMatteo, in response to that argument in the reply brief says, well, wait, look, elsewhere in the specification it may be updated directly from the customer system. Well, we agree with that. We agree that other than Claim 1, the external network may be any external network. So the VIG may be connected directly to HPLMN. That's not excluded by these claims. But it has to be updated from an external network or system in the language of that term in the specification. And, in fact, Your Honor, there's a very interesting point. This patent, Mr. DiMatteo's entire argument, is because of Figure 2, the VPLMN, that is the visited network, the left-hand network, does not have to be connected to an external network, right? That's his entire argument. The patent actually discusses that point. There's one example of that. It's in Column 5, Lines 13 through 19, where it says that the visiting, the roamer is on a network which is not connected to Global Packet Switch Network 22. Does it say then that there's a visited intelligent gateway in that system? No. In that embodiment, there is an optional, to make it work, a country intelligent gateway. On the right-hand side, this is disclosed at Line 15, because you still have to have that intelligent gateway connecting the two networks together to make this invention work. So that in every single disclosure, there is an external network somewhere that the visited network uses to connect to an external network. Mr. Perriott, Column 3, when it talks about references now made to Figure 2, which illustrates the call flow of the system in Figure 1. Yes, Your Honor. The last sentence in that little paragraph says, in order to simplify the picture, again, it's talking about Figure 2, the mobility probe and its interfaces are not shown. Why doesn't it say, and neither is the Packet Switch Network? Why does it expressly tell me two of the items from Figure 1 that aren't shown on Figure 2, but not the one we're all talking about? Your Honor, the mobility probe is disclosed as being used only in the SMS delivery mode, not in the dialing sequence mode. That's one answer. The other is the interfaces of Mobility Probe 33 include the external networks, and that's disclosed, Your Honor, at page... Column 3 at the top, lines 3 through 7. The point of capturing, that is the point of capturing the data that is used by the mobility probe, may be an SS7 link set, which is a telephone internet protocol, going through the exit signaling transfer point coupling the external network to an external signaling network. So again, that external network is part of the interface of the Mobility Probe. Is that the same thing as the Packet Switch Network? I don't think so. No, Your Honor, it's any external network. Again, to be clear, the Packet Switch Network is shown as an example, and it's listed in Claim 1, but the patent is not listed to the internet. It could be used, for example, to connect directly to a VPN. In the old days, this is an older patent, a hotel, a large hotel, or even this court may once have had a private branch exchange system, a PBX system, which would be a dedicated phone system, a circuit switch system. This invention, very easily, the VIG, the Intelligent Gateway, could connect directly to that system without using the internet. So while the disclosed embodiment is the internet, any external network can work. I don't understand your response, Mr. Perry, because you argued in your brief that I should read Figure 2 effectively as a subset of Figure 1. Yes, Your Honor. And if Figure 2 is a subset of Figure 1, then I have to assume there's a Packet Switch Network in Figure 2, don't I? It's a subset. Your Honor, the Packet Switch Network, yes, but that is it for any other external network. But then it's not a subset of Figure 1, because Figure 1 doesn't disclose any other external network. Your Honor, no. It can't be a subset of something that the main set doesn't include. The specification explains later in Column 5 and 6 that the VPN, the international VPN, for example, can be substituted as a separate external network. To directly answer your point, though, about the mobility probe, Judge Moore, Figure 2 also omits a bunch of other things, the STP, the VLR, everything on the right-hand side, simply because that call flow doesn't go through those components in that particular disclosed type of call flow, which is not to say that they're not part of the system claimed in the patent, because some of them clearly are part of the system claimed in the patent. The routing center, for example, of Claim 10. So your argument is that Figure 2 is a subset illustrating one of the functions that can be performed by the Intelligent Gateway, and for that one function, these are the only components that would have been needed, so it doesn't tell me all of the others that are needed for all the other functions that must be performed. To complete that single call, that's correct. And it in particular doesn't disclose the updating function, which has to happen at some point throughout. If there were any doubt about this, what the gateway means, and again, gateway is a, there is no network engineer in the world that would tell you a gateway is anything other than connecting two networks. When Mr. DiMatteo said the gateway is within the system, there really has to be that external connection, and Star Home itself, in prosecuting the European equivalent patent, acknowledged that point. This is at page 181 of the record, where the application was initially rejected over a prior art patent that showed an SCP, a service control point, which is similar to the STP, a signal transfer point in the disclosure here, and the applicant, Star Home, responded, quote, this is at page 181, a gateway provides access to an external environment. It is defined in that way, and it provides a page and line number that is identical to the language of the specification in the United States, that is, in terms of an access means from one network to another. So the entire argument, to bring it back to where we started, the court's judgment has to be affirmed unless an intelligent gateway can be construed as not connecting a mobile network to an external network. There is nothing in the claims that would allow that, there's nothing in the specification. What about in the first claim, where it says that the first intelligent gateway, it goes on and says it's configured for coupling to a packet switch network, and it goes on talking about coupled to the packet switch network, and that same limitation's not in the asserted claims. So, Your Honor, it's an excellent point. So claim one is the multiple IG version of figure three, that is, there's an intelligent gateway on both sides of the transaction, and what is claimed in claim one and disclosed in the corresponding part of the specification is using Global Packet Switch Network 22, the internet, for those two intelligent gateways to talk to each other. That is what that refers to. Claim 10, the asserted system claim, has only one intelligent gateway on the left-hand side, the visited side. The gateway there, there is no intelligent gateway on the right-hand side, the home side for it to talk to. The claim is, and the disclosure is, it can connect to any external network. It can connect to a VPN, it can connect to the Global Packet Switch Network 22, it can connect directly to the customer system, as disclosed on the updating thing. Any of those external networks would count that this is a non-limiting claim. However, if we go on through the claims, claims 35 and 40, also asserted claims, and this is an important point, in the claims themselves, claim functions, which Mr. DiMatteo calls gateway functions. They're not gateway functions, they're telephone functions. Translating numbers and delivering SMSs and providing call assistance all have to be done by, quote, obtaining knowledge. Obtaining knowledge, that's what makes it intelligent, the knowledge from the home network. And the way that the IG, the visiting IG, obtains that knowledge is through an external network connection. It has to go out to a network, the internet, VPN, PBX, direct connection, you name it, something that may be invented in the future, some kind of a network, and that's what a gateway does. Again, they didn't claim a router, they didn't claim a bridge, they didn't claim a switch, they didn't claim a node, they didn't claim a module, they didn't claim a point, they claimed a gateway. A gateway connects two networks and translates the protocols between them. Accepting that, accepted, established, understood, undisputed construction requires affirmance. So is your argument that, back on figure two, that items two and three, that that's not a network connection? That's an internal to the VPLMN, a single call. No, my question is, isn't that a network, isn't that a gateway connection? Your Honor, once the call is routed to the international telephone network, yes. Directly to the UMSC and IG? That makes it a network connection. I'm talking about a gateway. No, Your Honor. Two and three are simply two components of a single network talking to each other. That's not a gateway function. It's just like MSC talks to STP and VLR within the network in the disclosure of figure one. The pieces can talk to each other, that's not a gateway. The gateway, what a gateway is, the defining characteristic of a gateway is talking to an external network. Any final thoughts, Mr. Pierce? The district court's judgment should be affirmed. Thank you, Your Honors. Thank you. Mr. DiMatteo? Thank you. There were a number of issues thrown up there. I'm just going to address a few of them. We both agree that a gateway works between two networks and we both agree that a gateway translates. In the computer world, it'll translate signal protocols. In the 487 patent, it's translating dialing sequences. That's the gateway function. The patent is interested in two networks and the networks that the gateway is between, they're not some external networks. It's that roamer trying to talk to the visited mobile network in its home network language to get outside the international network. So the two networks were cited in the claim. The two networks that the intelligent gateway is working with is the roamer trying to communicate to the visited network. That's literally recited in the claims. Now, figure one is not described as a single embodiment. It's described expressly as a general schematic illustration of a system according to some embodiment to the invention. So it's not limited to every single component there and that makes sense because there's tons of options. The mobility probe is an option. The home network and, of course, this connection to the external internet network, it's an option. And figure two talks about figure one and says, by the way, that was on column two, lines 24 to 27. Figure two says it illustrates the call flow for short-coded erroneous full number by a roamer at VPLM one of figure two according to some embodiment to the invention. So when we're looking at figure two, we're looking at an embodiment or some embodiment to the invention. And none of the embodiments of the invention require that the intelligent gateway be physically attached to some other external network. It's simply not there and nothing about the dictionary definitions mandate that additional requirement be read into intelligent gateway. The IEEE definition is a functional unit that interconnects a local area network with another network having a different higher layer protocol. That is a classic example and I agree the definitions of Bryce, gateways that acts as physical boxes between two networks. Actually, a functional unit. A functional unit box is what we call. And so their definitions include that classic gateway. We don't deny that. And their embodiments. But I didn't see you point to any definition that a gateway doesn't have to interconnect two networks. There's nothing about the definition of gateway that mandates it physically do that connection. It says it talks about making a connection. We have tandem bound. We talk about the last, look at the last definition in the IEEE. Definition B. There's, let's see, a dedicated computer that is attached to two or more networks and would package from one to another. All right. A device B, a device that connects two systems that use two different protocols. Okay. In the computer context, the connection being made by the intelligent gateway in this path is a connection that the roamer is trying to make with the visited network using its home network dialing sequences. Wait, but how is that connecting two different systems using different protocols? It's not. It's just using information from one system to affect a call in the second one, but it isn't connecting two different systems. It is making the connection. Explain. The roamer is dialing. It's talking to the Washington DC network and it's dialing using its protocols for Germany. Yes, but that doesn't connect it to Germany. That's just it. You want me to read database, gateway as a database. You want me to conclude that a gateway can simply be a database that contains information about another network. No. I'm asking you to construe gateway under this patent as being a translator between the dialing sequence protocol... Translator. A database could be a translator. All of the definitions in every single one presented in this case doesn't require translation. It requires connection between the two. Interconnecting two. Passing packets from one to the other. Certainly. Certainly. And that's what's happened here, Your Honor, because what's happened is they've pushed, instead of having the virtual gateway physically between the roamer and the Washington network, they've pushed the gateway into the Washington network. And what's happened is that dialing sequence gets passed first to the intelligent gateway, so that's one network, dialing protocol, and then back to the mobile switch network. There is nothing that mandates a connection to perform that claim function of dialing, and that's what the claims call an intelligent gateway to translate these dialing sequences. The whole patent talks about translating these bad dialing sequences, and that's done by the intelligent gateway. Yes, it uses a database. I submit. We don't walk away from that. Do you have a final thought, Mr. Dinklage? Certainly, Your Honor. Infringement in this case is very clear. Roamware copies the exact function that you see in Figure 2. But for the narrow claim construction and the over-reliance on the dictionary definition, our infringement case would be concluded. I ask this Court to reverse the claim construction, reverse the finding of infringement, and remand for trial and error. Thank you. Thank you, both counsel. The case is taken under submission. That concludes our proceedings today. All rise.